J. Campbell Jenkins, etc. *v.* M. B. Vaughan.

*(Nashville,* December Term, 1954.)

Opinion filed March 11, 1955.

HARRY PHILLIPS, of Nashville, for complainant J. Campbell Jenkins.

R. C. BOYCE, JR., of Nashville, for defendant M. B. Vaughan.

MR. JUSTICE PREWITT delivered the opinion of the Court.

Jenkins is a real estate broker and instituted this suit to recover a commission of $1,110.65, claimed to be due by the terms of a written contract with defendant, Vaughan. There was a decree in favor of the complainant by the Chancellor but this decree was reversed. We have granted certiorari and the case has been thoroughly argued here.

The defendant owned two drug stores in Nashville, one on First Street and the other on Gallatin Road. He listed both of these businesses for sale with complainant, making a separate listing of each on complainant's customary form card. Only the listing of the Gallatin Road business is involved in this suit.

Mr. Manners, complainant's employee, filled in the card for this listing. On one side he wrote a description of the business, price, the terms, and this: " 'Confidential' Do not advertise locally O. O. M."

On the other side was a printed form, addressed to complainant's trade name, with the blanks filled in, as follows:

"You are hereby appointed exclusive agents to make sale or lease of business and property described on the opposite side of this card for 90 days from date.

"You are authorized to accept deposit on purchase price, and execute binding contract of sale on Owner's account.

"In case said property is sold within said time, either through you or any other reason, or if said property is sold after expiration of this contract to any prospect secured by you, then in that case I promise to you a cash commission as above stated on the whole amount for which said property may be sold.

"It is further agreed that if the property is sold the owner will furnish acceptable title, abstract or guaranty, to be optional with purchaser, will make necessary warranty deeds or bills of sale, and comply with Bulk Sales Law if necessary.

"The commission in the amount of 5% of the sale price will be paid to you, with a minimum commission of $100.-00 on any sale.

"This 10 day of October, 1951.

"/signed/M. B. Vaughan"

Complainant put these two cards in his office file of active listings. He had listings of many other businesses, including other drug stores. He daily advertised his business in a local paper, and had many people coming to this office looking for various kinds of business.

The proof shows that the complainant talked to one or two people about the store on Gallatin Road, and his employee Manners talked to two or three people about both stores of defendant. This seems to have been the extent of their efforts to find a purchaser. They did not advertise the property, or show it to any person. Nor is there any showing that they spent any appreciable time or money trying to find a purchaser.

On December 10, 1951, defendant telephoned Manners, said he had decided not to sell the stores, and directed that no further effort be made to sell either of them and that the listings be canceled; and defendant testified that complainant's employee Manners agreed to cancel them.

On December 28, 1951, defendant sold this store for $22,213 to a purchaser procured by another broker. Complainant and Manners went to see defendant and told him they still held the exclusive listing of the property and proposed that he have the other broker divide the commission with them, which he declined to do. He also declined to pay them a commission after having paid one to the other broker.

Complainant does not claim that he found a purchaser or would likely have found one, or that his efforts aided the sale or benefited defendant in any way. He bases his claim not on services rendered or benefits conferred, but on the writing containing defendant's promise to pay him a commission if the property was sold.

This writing contained no promise by complainant, was not signed by him, and no consideration was given by him for it. It was not a contract but only an offer by defendant to complainant to make a unilateral contract.

Such an offer may be revoked by the owner before it has been accepted by the broker's performance of the requested service.

Now the question comes as to whether the complainants are entitled to any part of the commission on the ground that they have rendered valuable service.

*(2)* It seems to be the general weight of authority that where a broker has spent time and money in an effort to perform, has rendered a substantial part of the requested performance, the offer becomes irrevocable during the time stated and binding according to its terms. *Hutchinson* v. *Dobson-Bainbridge Realty Co.,* 31 Tenn. App. 490, 217 S. W. (2d) 6.

The reason for the rule is avoidance of hardship to a broker, who has spent time and money in an effort to sell and may have created a market or stimulated a demand for the property.

*(3)* However, this rule does not apply where the broker has spent no appreciable time or money in an effort to find a purchaser. In such case it is not unjust to him for the owner to revoke the offer before he has found a purchaser.

*(4)* The extent of complainant's proof as to services rendered was that he talked about this store to one or two people in his office, and Manners talked to two or three about both stores. He did not advertise the property or show it to anyone. He did not prove that he spent any amount of money or time in an effort to find a purchaser.

This being true we think the decree of the Court of Appeals is correct and it is affirmed.